IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| J.A. LANIER & ASSOCIATES, INC. | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:21-cv-390 |
| | § | |
| ROBBINS ELECTRA MANAGEMENT, | § | |
| LLC AND CHRISTINE DEFILIPPIS | § | |
| | § | |
| Defendants | § | JURY TRIAL DEMAND |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, J.A. LANIER & ASSOCIATES, INC., files this amended complaint against Defendants, ROBBINS ELECTRA MANAGEMENT, LLC and CHRISTINE DEFILIPPIS, and would show this honorable court the following:

### A. Parties

1. Plaintiff, J.A. Lanier & Associates, Inc., (hereinafter "Lanier"), is a public adjusting firm licensed in Texas with its principal office located at 406 West Main Street, Stockdale, Texas 78160.

2. Defendant, Robbins Electra Management, LLC (hereafter "Robbins"), is a Florida Foreign Limited-Liability Company, doing business in Texas. Defendant has already appeared and answered in this case and no further service is necessary.

3. Defendant, Christine DeFilippis (hereafter "DeFilippis"), is an employee of Robbins, who has a principal place of business at 4890 West Kennedy Blvd., Suite 240, Tampa, Florida 33609. Defendant has already appeared and answered in this case and no further service is necessary.

4. The Court has jurisdiction over this dispute pursuant to 28 USC §1332(a).

## B. Agency and Respondeat Superior

5. Whenever in this complaint it is alleged that the Defendants did any act or thing, it is meant that Defendants themselves or their agents, officers, servants, employees, or representatives did such act or thing. They were also done with the full authorization or ratification of Defendants or done in the normal routine, course, and scope of the agency or employment of Defendants or their agents, officers, servants, employees, or representatives.

## C. Conditions Precedent

6. All conditions precedent to recovery have occurred or been performed.

## D. Facts of the Case

7. In January of 2018, Defendants contacted Lanier to obtain public adjusting services on behalf of Robbins for wind and hail damage at an apartment complex, the Carling on Frankford at 1811 East Frankfort Road, Carrolton, Texas 75007 (hereinafter "the Carling"). On January 29, 2018, Joseph Lubeck, on behalf of Robbins, signed Lanier's public adjuster's contract to represent Robbins for any insurance claim concerning "wind storm and hail damage to buildings" at the Carling. Under this contract, Robbins agreed to pay Plaintiff Lanier, as its public insurance adjuster, ten percent (10%) of any amount collected, adjusted, or otherwise received or issued for settlement of insurance claims caused by wind storm or hail damage to the Carling. For the applicable loss, the contract stated: "to be determined."

8. Pursuant to their agreement, Plaintiff thereafter started adjusting Robbins' storm damage losses. Plaintiff informed the insurer about his retention as Defendants' public insurance adjuster and claims representative for the storm damage at the Carling. In February of 2018, with the consent of Defilippis and on behalf of Robbins, Plaintiff sent the insurance carrier notice of

loss concerning the storm damage to Defendant Robbin's buildings at the Carling from a hailstorm in 2016 (hereafter "the First Claim").

9. To properly measure and document this storm damage, Plaintiff (at his own expense) retained the expert and consulting services of Gary Treider with Chaparral Consulting and Forensics and Corbin Kellison. They inspected the property, documented and reported on the storm damage, and estimated the cost to properly repair the storm damage to the buildings at the Carling. For their services and reports, Plaintiff paid Mr. Kellison $17,000 and Mr. Treider $6,999.31. Plaintiff also expended many man-hours by attending and conducting multiple inspections of the property and meetings with the experts and representatives of the insurer. Based on this investigation and adjustment, Plaintiff estimated the cost to properly repair the storm damage to the Carling at $994,410.38.

10. During the adjustment of the First Claim, however, Plaintiff was asked to investigate the damage regarding a second wind and hailstorm. Plaintiff informed Defendants that the results of his investigation showed that the damage occurred from the 2016 storm, not any later storms. After Plaintiff told them that a later claim (hereafter "the Second Claim") was not valid and should not be pursued. On or about July or August of 2018, DeFilippis agreed with Plaintiff as to the invalidity of the Second Claim. At that time, DeFilippis also told Plaintiff to keep working on the First Claim. DeFilippis failed to tell Plaintiff that they were going to pursue the 2018 claim despite the acknowledged invalidity of the second insurance claim.

11. Unbeknownst to Plaintiff, DeFilippis and Robbins pursed the Second Claim and had all of the roofs of the Carling property replaced and paid for by a different insurer based on a June 6, 2018 alleged hail storm in November 2018. Defendants may have also used the claim information that Plaintiff had generated when submitting its second claim.

12. Plaintiff believes that Defendant Robbins was paid approximately $583,000 for its windstorm and hail damage loss to its buildings at the Carling through the Second Claim. Even though Plaintiff Lanier had a contract that would apply to the Second Claim at the Carling, Defendants, Robbins and DeFilippis, filed and pursued an alleged new loss without Plaintiff Lanier's knowledge or consent. Defendants did so to fraudulently avoid paying Plaintiff his contractual 10% public adjuster's fee.

13. After Plaintiff became aware of the payment on the new claim, Plaintiff contacted DeFilippis and advised her that his contract applied to the recent payment made by the second insurer. DeFilippis disputed that application, but then inconsistently, DeFilippis sent a February 11, 2019 email to Philip Ambrose (the adjuster on the First Claim) demanding payment of the deductible buy-down policy in the amount of $75,000. This demand was made even though Defendants had already been paid and made whole on the Second Claim. In this respect, Defendants were trying to obtain benefits from the First Claim and DeFilippis's conduct reveals Defendants' fraudulent inclinations.

14. Under the subject contract, Plaintiff has a 10% interest in all insurance proceeds paid to Defendants for storm damage at the Carling. Despite Plaintiff's requests for payment, Defendants have failed and refused to pay Plaintiff its ten percent public adjuster's fee owed under the subject contract on the insurance payment issued to Defendant Robbins for the wind storm and hail damage to the buildings at the Carling. By doing so, Defendants have breached Lanier's public adjuster's contract, and Defendants also have fraudulently deprived it of its 10% public adjuster's fee of approximately $58,000.

15. In addition, Defendants' conduct, including oral and email communications, induced Plaintiff to keep working on the First Claim after Defendants agreed that the Second Claim was not valid and should not be pursued. Defendants then concealed the fact that they were making

the Second Claim to Plaintiff even though he had a contractual right and duty to adjust the Second Claim. Plaintiff relied on Defendants' communications and information to keep working on their 2016 claim and expended substantial man-hours and incurred out-of-pocket expenses of over $40,000. In this respect, Defendants wrongfully induced Plaintiff to keep on expending man-hours and out of pocket expenses even though were pursuing the 2018 claim behind Plaintiff's back and without his knowledge to Plaintiff's detriment. A copy of Mr. Lanier's email concerning this conduct by Defendants is attached hereto as Exhibit "A."

16. Defendants obtained insurance proceeds from the Second Claim and replaced the roofs, which Plaintiff learned of for the first time in December of 2018 when he inspected the property with the consultants on the First Claim. Plaintiff's justified reliance on Defendants' conduct, promises, and representations has caused him the reliance type damages described herein. Defendants' conduct also constitutes fraud, fraud due to non-disclosure, and negligent misrepresentation.

### E. First Cause of Action - Breach of Contract

17. Plaintiff incorporates all the allegations in this complaint for this cause of action against Defendant Robbins for breach of contract. Defendant agreed to pay Plaintiff ten percent (10%) of any amount collected, adjusted, or otherwise received or issued for settlement of insurance claims caused by wind storm or hail damage to the Carling. Even though Plaintiff performed under this contract by investigating the subject storm damage on which Plaintiff incurred investigatory costs on behalf of Defendant, Robbins failed and refused to pay Plaintiff its 10% interest in the insurance proceeds Defendant obtained for the subject storm damage to the Carling of approximately $58,000. By doing so, Defendant Robbins has breached its contractual obligations and the assignment of insurance proceeds in the subject contract. As a

result of the breach of contract, Plaintiff has suffered the damages that are described in this complaint, which damages are within the jurisdictional limits of this court.

18. In addition, Defendants should be equitably estopped from asserting that Plaintiff's public adjuster's contract does not apply to Defendants' recovery of insurance proceeds concerning the subject property. In this respect, Defendants made a false representation and concealed material facts from Plaintiff concerning Defendants' belief and intentions on the Second Claim. Defendants did so intending that Plaintiff act and rely on the misrepresentation and nondisclosure. Plaintiff reasonably acted and relied on the misrepresentation and nondisclosure to his detriment, causing him damages.

### F. Second Cause of Action – Negligent Misrepresentation

19. Plaintiff incorporates all the allegations in this complaint for this cause of action against Defendants for negligent misrepresentation. This cause of action is based on the same representations and nondisclosure described herein by Defendants. In this respect, Defendant DeFilippis, individually and as an agent, employee, or representative for Robbins, made the subject misrepresentation and failure to disclose in the course of the Parties' business. Defendant DeFilippis supplied false information to Plaintiff and did not use reasonable care in obtaining or communicating the information. Plaintiff justifiably relied on DeFilippis' representation and failure to disclose in which DeFilippis had a duty to disclose. Defendants' negligent misrepresentation and failure to disclose proximately caused Plaintiff's injury and damages, as described in this complaint.

### G. Third Cause of Action – Common Law Fraud

20. Plaintiff incorporates all the allegations in this complaint for this cause of action against Defendants for common law fraud. Defendants DeFilippis and Robbins knowingly or recklessly made a false promise of future performance to Plaintiff that it would be paid 10% of

any insurance proceeds that Defendants collected, adjusted, or otherwise received for settlement of insurance claims caused by wind storm or hail damage to the Carling. Defendants' false promise to Plaintiff was material because Plaintiff relied upon it in providing its public adjusting services for Defendants on Robbins' insurance claims on the Carling. In this respect, Plaintiff justifiably relied on Defendants' false promises of future conduct which caused Plaintiff damages that are within the jurisdictional limits of this court.

### H. Third Cause of Action – Fraud By Nondisclosure

21. Plaintiff incorporates all the allegations in this complaint for this cause of action against Defendants Robbins and DeFilippis for fraud by nondisclosure. Defendants intentionally concealed material information in regards to pursuing the Second Claim for storm damage at the Carling. Plaintiff had no knowledge that Defendants had filed the Second Claim with a new insurer on the property and storm damage that Plaintiff was contracted to adjust. Plaintiff continued to expend time and money in adjusting the First Claim to its detriment while Defendants were adjusting Second Claim through a roofer without Plaintiff's knowledge or consent. Due to Defendant's fraudulent conduct, Plaintiff has suffered the damages described herein, which damages are within the jurisdictional limits of this court.

### I. Fourth Cause of Action in the Alternative for Promissory Estoppel

22. Plaintiff incorporates all the allegations in this complaint for this alternative cause of action against Defendants Robbins and Defilippis for promissory estoppel. In the alternative, if a valid contract is found to not exist concerning the insurance proceeds for the Second Claim, Plaintiff asserts that Defendants' conduct, including oral and email communications, reasonably induced Plaintiff to keep working on the First Claim, to Plaintiff's detriment. After Plaintiff told Defendants that their 2018 claim was not valid and should not be pursued, Defendants' agreed that Plaintiff should continue to adjust their 2016 claim. At this time, Defendants failed to tell

Plaintiff that they were going to pursue the Second Claim through another consultant against a different insurer. Defendants should have reasonably expected that their representations and promises would induce action on behalf of Plaintiff to keep working on the First Claim. In reasonable and detrimental reliance upon Defendants' representations and promises, Plaintiff kept working on the First Claim and expended substantial man-hours and incurred out-of-pocket expenses of over $40,000. In order to prevent an injustice, Plaintiff is entitled to recover his out-of-pocket expenses (reliance damages) from Defendants under the doctrine of promissory estoppel.

### J. Plaintiff's Actual, Reliance and Exemplary Damages

23. Through the above-described acts, omissions, failures, and conduct of Defendants, Plaintiff has sustained injury and damages that include, without limitation, its 10% public adjuster's fee of approximately $58,000, plus Plaintiff's investigative costs (alternatively, reliance damages) that it incurred for Defendants in the amount of over $40,000, attorney's fees, prejudgment interest, and costs. All these damages are within the jurisdictional limits of the Court.

24. Due to their fraud, Plaintiff is also entitled to recover exemplary damages against Defendants. Defendants' fraud was committed intentionally and with "malice" and "gross negligence" as those terms are defined in Chapter 41 of the Texas Civil Practice and Remedies Code. These violations by Defendants are the type of conduct that the State of Texas protects its citizens against by the imposition of exemplary damages. Therefore, Plaintiff seeks the recovery of exemplary damages in an amount to be determined by the finder of fact that is sufficient to punish Defendants for their wrongful conduct and to set an example to deter these Defendants and others similarly situated from committing similar acts in the future.

## K. <u>Attorney's Fees</u>

25. As a result of the Defendants' conduct described in this complaint, Plaintiff has retained the undersigned attorneys to prosecute this action and has agreed to pay reasonable attorney's fees. Plaintiff is entitled to recover these reasonable and necessary attorneys' fees under Chapter 38 of the Texas Civil Practice & Remedies Code and alternatively, under the doctrine of promissory estoppel. Plaintiff's attorney's fees can also be taken into account under Texas law in the award of any exemplary damages in this case.

WHEREFORE, PREMISES CONSIDERED, Plaintiff has already demanded a trial by jury and after the final hearing in this case, Plaintiff requests that the Court award Plaintiff a judgment against Defendants for the following:

A. All actual and exemplary damages as requested herein in an amount within the jurisdictional limits of the court;
B. Alternatively, reliance damages under the doctrine of promissory estoppel;
C. Reasonable attorney's fees through trial and on appeal;
D. Pre-judgment and post-judgment interest as provided by law;
E. Costs of court; and
F. Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

*Loree & Lipscomb*
777 E. Sonterra Blvd, Suite 320
San Antonio, Texas 78258
Telephone: (210) 404-1320
Facsimile:  (210) 404-1310


By: */s/Robert W. Loree*
     Robert W. Loree
     Texas State Bar No. 12579200
     rob@lhllawfirm.com

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that Plaintiff has served a true and correct copy of the foregoing document on October 11, 2021 to counsel of record through the Court's ECF filing system.

>    */s/ Robert W. Loree*
>    Robert W. Loree