# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| J.A. LANIER & ASSOCIATES, INC., § <br> *Plaintiff,* § <br> § <br> v. § <br> § <br> ROBBINS ELECTRA MANAGEMENT, § <br> LLC, and CHRISTINE DEFILLIPIS, § <br> *Defendants.* § <br> § | Civil Action No. 4:21-CV-390 <br> Judge Mazzant |

## **MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants' Opposed Motion to Exclude Gary B. Treider as an Expert and Strike his Report (Dkt. #20). Having considered the motion and relevant pleadings, the Court finds the motion should be **DENIED**.

### BACKGROUND

Plaintiff, J.A. Lanier & Associates, Inc. ("Lanier") filed suit against Defendants American Landmark Management, LLC f/k/a Robbins Electra Management, LLC ("Robbins") and Christine DeFilippis ("DeFilippis") for breach of a Public Insurance Adjuster Contract, fraud, fraud by non-disclosure, negligent misrepresentation, and promissory estoppel (Dkt. #14). Lanier's claims arise from hail damage to several roofs of buildings within an apartment complex Robbins owned, located at 1811 East Frankford Road, Carrollton, Texas 75005 (the "Carling"). A core issue in this case is whether the hail damage to the roofs at the Carling occurred on either March 23, 2016 (the "2016 Storm"), or June 5, 2018 (the "2018 Storm").

To properly measure and document the damage from the two hailstorms, Lanier retained the expert and consulting services of Gary B. Treider ("Treider"). Lanier eventually designated Treider as an expert on the cause and scope of hailstorm damage to the roofs at the Carling. After conducting his investigation, Treider concluded the damage at the Carling was the result of hail produced during

the 2016 Storm.

On November 8, 2021, Defendants moved to exclude Treider as an expert in this case and strike his report (Dkt. #20). After numerous extensions, Lanier filed its response on March 14, 2022 (Dkt. #32). Defendants replied on March 18, 2022 (Dkt. #34).

## LEGAL STANDARD

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury. 509 U.S. 579, 590–93 (1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590–91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, to be admissible, expert testimony must be "not only relevant but reliable." *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following, non-exclusive list of factors that courts may use when evaluating the reliability of expert

testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593–94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 595.

The *Daubert* factors are not "a definitive checklist or test." *Id.* at 593. As the Supreme Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* at 594. The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kuhmo*, 526 U.S. at 152. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

## ANALYSIS

Defendants argue Treider is not qualified, he relied on insufficient facts or data in reaching his conclusions, and his opinions are not reliable (Dkt. #20). The Court will address each argument in turn.

### 1. Qualifications

Defendants contend there is no information on Treider's educational background, certifications, or licenses (Dkt. #20 ¶¶ 13–14). Lanier responds that Treider is more than qualified given he has conducted over 20,000 roof inspections and investigations and has spent more than 1,000 hours conducting a hail impact analysis. The Court finds Treider is qualified to give his expert opinion on the cause and scope of the hail damage at the Carling.

"Whether an individual is qualified to testify as an expert is a question of law." *Williams*

*v. Monitowoc Cranes, L.L.C.*, 898 F.3d 607, 614–15 (5th Cir. 2018) (citing *Mathis v. Exxon Corp.*, 302 F.3d 448, 459 (5th Cir. 2002)). Pursuant to Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion." FED. R. EVID. 702; *see also United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992) ("[t]o qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth'"); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999) (stating that a witness may be an expert even if his or her expertise is based purely on experience).

Rule 702 does not require "that an expert be highly qualified in order to testify about a given issue." *Williams*, 898 F.3d at 614–15. Indeed, "[a]lthough an expert's qualifications may be less-than-sterling, she may still be certified." *Id.* For all a Court must find "are 'sufficient indicia' that an individual will 'provide a reliable opinion' on the subject . . . ." *Id.* at 625 (citing *Huss v. Gayden*, 571 F.3d 442, 455–56 (5th Cir. 2009)). This is because "[d]ifferences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id.*

From 1974 to 1991, Treider owned an incorporated property and casualty insurance agency. During that time, Treider had many roles, one of which was as an adjuster for property and casualty claims. From 1991 to 2007, Treider worked as a consultant at a regional consulting firm based in Dallas, Texas. While there, he prepared scope and cost appraisals and performed forensic tests, among other duties. Since 2008, Treider has owned and operated his own consulting firm. Treider now provides damage consulting services, appraisal services, and materials testing. Treider spends two to four days each month performing tests in a lab certified by the International Accreditation Service. Treider is a member of the American Society for Testing and Materials

and regularly attends seminars and workshops, many of which are focused on the effects of hail and wind.  Finally, 95% of the sites Treider evaluates involve commercial and multi-family structures, like the Carling.  In reviewing Treider's curriculum vitae, the Court finds Treider surpasses the "low threshold" for qualifying as an expert in this case.  *Thomas v. Deloitte Consulting LP*, No. 3-02-CV-0343-M, 2004 WL 5499955, at *3–4 (N.D. Tex. Nov. 30, 2004).  Thus, the Court declines to exclude Treider from testifying or strike his report due to an alleged lack of qualifications.

### 2. Basis of Opinions and Reliability

Defendants next argue Treider's report is based on insufficient facts or data (Dkt. #20).  Defendants posit Treider fails to set forth any reasoning tying the data he relied upon to the conclusions he made.  Defendants state the "Court must decide whether there is 'too great an analytical gap' between the data and the opinion" (Dkt. #20 ¶ 19).  Lanier responds that Treider stated a reliable methodology for performing a forensic storm damage assessment and relied upon sufficient data.

In making these arguments, the parties appear to conflate the sufficiency of the basis of an expert's opinions with the reliability of the method in which the expert reached the conclusions.  For example, both sides devote a portion of their arguments on sufficient factual basis to the concept of "analytical gap."  However, "analytical gap" is a concept that goes hand-in-hand with reliability.  *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (holding a court may exclude testimony as unreliable where "there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered[.]").  Moreover, the Court takes no issue with Treider's factual basis for his opinions.  Treider utilized: (1) the National Oceanographic and

Atmospheric Administration's ("NOAA") Severe Weather Data Inventory;[1] (2) the NOAA's Storm Events Database for Dallas County, Texas;[2] (3) a Hail Verification Report from CoreLogic;[3] (4) a 2011 report by the Department of Civil and Coastal Engineering at the University of Florida, "The Unsealing of Naturally Aged Asphalt Shingles: An In-Situ Survey";[4] and (5) Treider's own observations, measurements, and documentation of the signs of hail splatter at the Carling (Dkt. #20, Exhibit A). Thus, the Court is satisfied with the factual basis of Treider's report and will focus on the reliability of Treider's opinions.

As the party offering Treider's expert testimony, Lanier has the burden to prove that Treider's testimony is reliable. *Daubert*, 509 U.S. at 590–91. "The proponent need not prove to the judge that the expert's testimony is correct, but [it] must prove by a preponderance of the evidence that the testimony is reliable." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (internal quotation marks omitted). "Reliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 592–93); *see also* FED. R. EVID. 702(c) (requiring that "testimony [be] the product of reliable principles and methods").

Treider's methodology for reaching his conclusions consists of: (1) making a visual inspection of the site; (2) observing the type and degree of damage; (3) documenting visual observations with photographs; (4) reviewing photographs by others; (5) acquiring relevant weather data; (6) reviewing engineering reports and consider the results of testing; and

---

[1] The NOAA's Severe Weather Data Inventory records whether hail was projected on a specific date in a given location, and the size of the hail.
[2] The NOAA's Storm Events Database documents the occurrence of storms, rare or unusual weather phenomena, and other significant meteorological events.
[3] CoreLogic is a private entity which sells weather verification services.
[4] The report was prepared at the United States Department of Defense's request. The report represents the culmination of a two-year research project investigating causes of premature roofing failures in windstorms.

(7) evaluating roof samples in a lab. At the Carling, Treider's visual inspection included looking for "fingerprints" of hail damage. Treider states any experienced hail investigator would look for such fingerprints, which include hail spatters, dents, broken or fractured windows, ripped awnings, and more (Dkt. #20, Exhibit A at pp. 10–11). Treider notes the single most important "fingerprint" is the degree of denting to metal surfaces.[5] Treider's evaluation process also includes shingle and membrane uplift tests, delamination and evaluation of membrane roof samples, and use of non-invasive moisture detection systems such as infrared thermography (Dkt. #33, Ex. A). Such testing has been recognized as industry standard for determining roof damage. *See e.g. State Auto Mut. Ins. Co. v. Freehold Mgmt.*, No. 3:16-cv-2255-L, 2019 WL 1436659, at *12 (N.D. Tex. Mar. 31, 2019) (vacuum uplift test); *see also Kahlig Auto Grp. v. Affiliated FM Ins. Co.*, No. SA-19-CV-01315-DAE, 2019 WL 148056, at *4 (W.D. Tex. Jan. 15, 2021) (delamination testing). Between the testing and his own observations, the Court finds Treider's methodology is reliable.

Defendants, however, argue Treider relies more on his experience rather than any data or reliable methodology. However, Rule 702 does not prohibit an expert from reaching an opinion based on the expert's experience. *Kumho Tire*, 526 U.S. at 156 ("no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience"); *Kozak v. Medtronic, Inc.*, 512 F. Supp. 2d 913, 918 (S.D. Tex. 2007) ("An expert's

---

[5] The degree of denting to metal surfaces us usually the single most important issue, providing:
  (a) Clues to estimate the number of hailstones that were *dense and significant enough for causing roof damage*
  (b) If hail caused dents in metal have corresponding hail spatter in the dent depressions that is *an indication of recent hail (since there has not been sufficient time for the spatters to fade out*
  (c) *Lack of spatter in the hail caused dents* can be an indication those dents were from older hail
  (d) If more than one size dent is observed, and only the largest dents have spatters in the dent depressions, then that is evidence that *the largest hail to impact the roof was the most recent hailstorm*
  (e) *If the largest dents have (crusty) oxidized dirt in them*, that can be is evidence that those dents were caused by hail occurring in the distant past
  (f) *Hail can't cause scratches*, dents with scratches in the dent depressions are likely from mechanical damage (hammer, etc.)

(Dkt. #20, Ex. A at p. 12) (emphasis in original).

testimony does not always have to be based on scientific testing; it can be based on personal experience."); *see also* FED. R. EVID. 702, adv. comm. notes (2000) ("Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony."). A witness' experience, studies and education, combined with a review of the relevant materials can provide a reliable basis for expert testimony. *Perez v. City of Austin*, No. A-07-CA-044-AWA, 2008 WL 1990670, at *10 (W.D. Tex. May 5, 2008); *see also Pipitone*, 288 F.3d at 247 (citing *Kumho*, 526 U.S. at 137 ("no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.")). Thus, this argument does not stand.

As for the "analytical gap" Defendants complain of, the Court found instances in Treider's report where he connects the data he relies upon to his ultimate conclusion. For example, Treider collected photographs of the Carling that were taken months before the 2018 Storm in which white spots on the shingles were visible. Treider noted:

> When the protective granules are displaced by hail impact from the surface of a shingle, these tiny white spots are not visible immediately but become progressively more visible over time as they surface. This occurs as the asphalt erodes away due to UV sunlight exposure. Months of UV sunlight exposure would be required for the little white spots to surface to the extent evidenced in the photos.

(Dkt. #20, Ex. A at p. 6). Such a fact supports Treider's conclusion that the damage at the Carling was the result of hail produced during the 2016 Storm and undercuts Defendants' contentions regarding any analytical gap. Moreover, any analytical gaps in the application of Treider's methodology may be raised at trial. "'[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'" *Gregg v. Covert*, No. No. 4:21-cv-871, 2021 WL 5140799, at *3 (E.D. Tex. Nov. 4, 2021) (citation omitted). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means

of attacking shaky but admissible evidence." *Id.* Here, Defendants may properly cross-examine Treider on his opinions, the materials relied upon in forming his opinions, and the reliability of his opinions at trial; however, there is no reason to exclude Treider's opinions.

## CONCLUSION

It is therefore **ORDERED** Defendants' Opposed Motion to Exclude Gary B. Treider as an Expert and Strike his Report (Dkt. #20) is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 26th day of April, 2022.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE